[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR CONTEMPT
The plaintiff has filed a motion for contempt claiming that the defendant has violated a court order dated September 8, 1998 requiring that the defendant participate in a program designated by the court to facilitate reunification between the plaintiff and the parties' son, Jamaal Cooley, who was born October 13, 1992.
The plaintiff commenced this action in July, 1994 seeking visitation with the child, who was not then two years old. Four years later, after unexplained delays in the process, the parties CT Page 2155 agreed on September 8, 1998 to commence a reunification program with various mental health professionals at the Village for Children and Families. The program included supervised visitation facilitated by a qualified family counselor and participation in the Transitions in Parenting Program designed for parents who had not seen their children for an extended period of time. The plaintiff participated in the program fully, and between September, 1998 and July, 1999 took part in at least fourteen parenting classes and counseling sessions. In February and March of 1998, the child visited with the plaintiff. The first visit was successful, but the second and third visits were not because the child became anxious and withdrawn. In addition, the child began to experience adjustment difficulties at school during this period. As a result, the defendant withdrew him from the program and undertook to have him independently evaluated by a psychologist not connected with the program. The plaintiff acquiesced in this decision, but it was made unilaterally. However, the psychologist did not complete her report until the summer, and then recommended that the visits with the child not resume until the child was ready. On July 30, 1999, the plaintiff wrote to the defendant offering to give up his parental rights. Although he testified that he wrote that letter under the pressure of his feeling that he could not progress in his relationship with the child because of the mother's interference, there is no evidence that that sentiment was ever communicated to the boy's mother.
There is no question that the defendant did not abide by the terms of the court order. She claims excuse because of the psychologist's recommendation. That, however, is not an excuse to this motion for contempt. A responsible psychologist should not unilaterally undertake to modify a court order without leave of the court, and a party is not free to rely on such a recommendation without seeking further court order. Nevertheless, the defendant cannot be held in contempt for failing to comply with the court order in light of the plaintiff's communication to her that he was going to terminate his parental rights with respect to the boy. Between March and June, the plaintiff agreed to the suspension of visits while the opinion of the psychologist was obtained, and thereafter he indicated that he was not pursuing his custody claim. Under those circumstances, the defendant was excused.
However, that finding does not completely resolve the concerns the court has about the progress of this case. With respect to CT Page 2156 the defendant's conduct, the court finds that the defendant interfered with the child's re-establishment of a relationship with his biological father. First, although this action had been pending for two years before the parties reached an agreement about visitation, and for an additional six months before visitation actually commenced, she never informed the child that the plaintiff was his father, that his father was seeking to visit with him, or that he had another father besides the step-father with whom he had lived since infancy and whom he appropriately regarded as his father. The social worker participating in the transitions program noted that to the child, a father was not a theoretical figure but a person who is with him in daily life. Secondly, based on the boy's comments during the first visitation, she told the little boy that the plaintiff had beat her and caused her to fear for her safety. During that visit, the boy asked why the plaintiff had beat his mom up, why the plaintiff did not marry his mom, and whether the plaintiff was going to hurt him. Given that the boy hadn't been told about the existence of the plaintiff much before then, there is no other reasonable conclusion than that the defendant told him what he needed to know to pose those questions.
Despite this, however, the plaintiff did not help his own situation when he became embroiled in grievances and disputes with the staff at the Village for Children and Families before they had had a chance to become fully involved in the program. His recourse, if things weren't working, was to return to court, just as the defendant's was. He did not aggressively seek his remedies. In addition, his letter of July 30, 1999 had to have a chilling effect on the defendant, who was openly concerned throughout the process that the plaintiff would not be a permanent fixture in the child's life.
Although the parties appear to agree that their continued involvement in the transitions program is desirable, the court does not have sufficient information to order a resumption of that program without additional information, which can only be determined after an evidentiary hearing. Moreover, the court is concerned that the child's interests are not being addressed or articulated.
Attorney Sally Hodgdon is appointed Guardian ad Litem for the child. The case is continued to March 8, 2000 for a determination of how her fees are to be paid. Parties will report that day for the short calendar unless they have an agreement concerning CT Page 2157 payment of Attorney Hodgdon's fees. The parties will schedule an evidentiary hearing with caseflow to address the future conduct of the case.
Orders will enter accordingly.
BY THE COURT,
Gruendel, J.